BUTLER UNIVERSITY v. DANNER ET AL.

[No. 17,113. Filed October 21, 1943. Rehearing Denied December 2, 1943. Transfer Denied December 20, 1943.]

238

240

Johnson & Zechiel, of Indianapolis, for appellant.

Louis B. Ewbank, of Indianapolis, for appellees.

DRAPER, J.—The appellant appeals from a judgment awarding the appellee Danner a fee of $4,500.00 for services rendered as executor of the estate of Carrie F. Robertson, deceased, and the appellee Ewbank a fee of $1,500.00 for services rendered as attorney for the executor. It is now admitted that the allowance to the appellee Ewbank was properly made and Danner will be hereinafter referred to as the appellee.

The appellant was named as residuary beneficiary and principal devisee under the will in question and in it the appellee was named as executor. Over a period of fourteen years after the making of the will five codicils thereto were made, the last of which, made in 1940, reads in part as follows:

"Under Item 14 of my last will and testament dated August 3, 1926, I have nominated Henry R. Danner as executor of my last will and testament, but unless he is willing to serve as executor for a total fee of One Thousand ($1,000) Dollars, I then nominate and appoint Edgar H. Evans and John W. Atherton as my executors.

"In all other respects the will of August 3, 1926, is to remain in full force and effect."

The appellee qualified as executor on the 8th day of September, 1941, and four days later filed his written renunciation of any and all claim to the compensation provided for the executor by the will and codicils,

(§ 6-1417, Burns' 1933). The appellant had no knowledge of the filing of this renunciation until June 8, 1942. On June 9, 1942, the appellee filed his petition asking the court to fix allowances of fees for him and his attorney and in his petition recited in a general way, among other things, the services they had rendered, and in the petition represented to the court that "Nothing now remains to be done in the settlement of said estate except to ascertain the amount of compensation for the services of the executor and his attorney, and to pay the same with any balance of accruing costs and expenses of administration, and to make final distribution of the remaining assets in compliance with the provisions of the will." The record in its entirety, including the testimony elicited by the appellee from his expert witnesses concerning the value of his services 'for administering the estate, shows to our satisfaction that by this petition and the evidence introduced by him to sustain it, the appellee sought and was awarded a full and final allowance for all services rendered and to be rendered by him in connection with the administration of the estate.

The appellant filed its written objections to the making of any allowance in excess of that provided for in the will, the matter came on for trial and after hearing the evidence, the court entered judgment as follows:

"It is therefore considered and adjudged that for the services of Henry R. Danner as said Executor of said Estate he shall be and is allowed and ordered to be paid the said sum of Four Thousand Five Hundred ($4,500) Dollars, and for the services rendered by said Louis B. Ewbank as Attorney for said Executor he shall be and is allowed and ordered to be paid the sum of One Thousand Five Hundred ($1,500) Dollars."

Appellant's motion for new trial was overruled and this appeal perfected.

It is contended that the appellant's brief is not so prepared as to present any questions to this court. It is our opinion, however, that the brief shows a good-faith effort to comply with the rules governing the preparation thereof and is sufficient to invoke our consideration of the merits of the cause.

The appellant prosecutes this appeal as from a final judgment and it is contended that this court has no jurisdiction for the reason that the judgment appealed from does not constitute an appealable final judgment, but amounts only to an interlocutory order for the payment of money, from which an appeal may be prosecuted only to the Supreme Court in the manner especially provided for such appeals.

The judgment under consideration was not an *ex parte* order but was entered after issues had been joined and the evidence admissible under the issues had been presented by both sides and fully and completely heard. The allowance made was in no sense a partial or *ad interim* allowance nor was it an allowance made upon the filing of a current report, but was a final allowance of fees made in anticipation of immediate final settlement of the estate. The only question presented by the pleadings was fully and finally determined by the court and the judgment entered amounts to a final and complete adjudication of the rights of the parties on a distinct and definite branch of the proceeding, reserving no question with regard thereto for future determination. It was therefore not an interlocutory order but was an appealable final judgment. *Home Electric Light and Power Company* v. *The Globe Tissue Paper Company* (1896), 145 Ind. 174, 44 N. E. 191; *Zumpfe et al.* v. *Piccadilly*

*Realty Company et al.* (1938), 214 Ind. 282, 13 N. E. (2d) 715, 15 N. E. (2d) 362; *Indiana National Bank of Indianapolis* v. *Danner, Receiver* (1930), 204 Ind. 709, 170 N. E. 327; *Ebenezer Old People's Home of the Evangelical Church et al.* v. *Bernhard et al.* (1935), 100 Ind. App. 636, 196 N. E. 129; *General Highways System, Incorporated,* v. *Thompson et al.* (1928), 88 Ind. App. 179, 155 N. E. 262, 156 N. E. 407; 19 Am. Jur. p. 279, § 406; § 2-3201, Burns' 1933.

It is asserted that § 6-1409, Burns' 1933, providing that in the settlement of an account rendered by an executor or administrator, all his former accounts may be so far opened as to correct any error or mistake therein, is decisive of the question under consideration. We are of the opinion, however, that this is a situation which has nothing to do with any account rendered by the appellee and is in nowise covered by any portion of this section of the statute, including the exception contained therein, for the exception can only relate back to the subject which precedes it, which is the correction of errors or mistakes in accounts rendered by the executor or administrator.

It is next urged that even though this be a final judgment, appealable as such, the appellant has failed to perform the acts necessary to give this court jurisdiction in that the appellant failed to comply with § 6-2001, Burns' 1933, with reference to the amount and filing of his appeal bond. In this case an appeal bond in the sum of $500.00 was filed with the clerk at the term succeeding that in which the motion for a new trial was overruled, and within thirty days after said ruling, and was approved by the court at the time of filing. The sureties on the bond were neither named nor approved in the term in which the motion was overruled nor was that neces-

sary. The applicable statutes relative to appeals in actions of the class to which the instant case belongs (§ 6-2001 and § 6-2002, Burns' 1933), and the rules of the Supreme Court of Indiana (See *Roebuck et al.* v. *Essex, Administratrix* (1938), 214 Ind. 637, 17 N. E. (2d) 469) must be complied with, for in the absence of such compliance this court is without jurisdiction to determine the appeal on its merits. *McIntosh* v. *Lochamier's Estate* (1937), 104 Ind. App. 149, 10 N. E. (2d) 445; *In re Singler, Guardian, etc.* (1937), 104 Ind. App. 415, 10 N. E. (2d) 409; *Rebstock* v. *Lucas, Administrator et al.* (1938), 104 Ind. App. 536, 12 N. E. (2d) 363. We consider the bond sufficient as to amount, for in our opinion this is not a case where "an amount of money is involved" within the meaning of the statute. There is no judgment that the appellant should or should not pay any sum to anyone, nor does the appellant have in its custody or under its control any money belonging to the estate or to the appellee or to which the estate or the appellee is or may be entitled. The appellant can in no event be liable for more than the costs involved. It was, therefore, not necessary that the amount of the bond be in double the sum in controversy and conditioned for the payment of the judgment, but it was necessary that the bond be in such sum as was designated by the clerk, this latter provision being, in our opinion, to insure against the loss of costs. There is no provision in the statute for any entry or memorandum to be made by the clerk in connection with his designation of the amount of the bond nor does the statute by its express terms require the approval of the sureties by the clerk. The record shows that the bond was filed by the clerk, and we believe that the action of the clerk in accepting the bond for filing and filing the same presupposes and constitutes

presumptive proof of the designation by him of the amount of the bond and his approval of the sureties, who had also been approved by the Court. We, therefore, believe that the bond was properly and timely filed. To the extent that the case of *Zonker et al.* v. *Zonker et al.* (1936), 102 Ind. App. 631, 4 N.E. (2d) 593, cited by the appellee, is inconsistent with the foregoing, it is disapproved.

It appears that four days after the death of the testatrix the will and codicils were read by the appellee. He considered the terms of the fifth codicil to be a reflection on his honor and honesty, felt that there was going to be trouble and consulted with the attorney whom he later employed to represent him as executor, who showed the appellee, himself an attorney-at-law, the law in regard to renunciation, and advised him as to how he should proceed. About three weeks later he appeared in court in connection with the probating of the will, and the evidence is sharply conflicting as to whether or not he then agreed in open court to serve under the terms of the fifth codicil, several witnesses testifying that he did, with the appellee testifying that on that occasion he had remained silent when the question of the thousand dollar item was being discussed, and that he had waited until, following the discussion of the fifth codicil, the court had framed the simple and direct question, "Will you serve as executor?", which question he answered in the affirmative. The appellee was thoroughly familiar with the contents of the fifth codicil, which was also read in open court before he was appointed executor, and it is apparent that at the time of his appointment he had no intention of accepting the compensation provided in the will, but on the contrary intended to later renounce it, although he did not at the time of his appointment make his

intentions known to the court or to interested parties. The alternative appointees were in court ready, able and willing to serve as executors. In our consideration of this matter we must assume that the appellee did not expressly agree in open court to serve as executor under the terms of the fifth codicil.

The appellant contends that the renunciation filed by the appellee was ineffective and that the appellee was bound to accept the sum of $1,000.00 in full of all services rendered by him as executor, for the reason that the statute which authorizes renunciation of the compensation provided by a will does not apply in cases where the appointment itself is conditioned upon the acceptance by the appointee of the compensation named in the will. The statute in question, being § 6-1417, Burns' 1933, reads as follows:

> "When provision is made by will for compensation to the executor thereof, the same shall be deemed a full satisfaction for his services, in lieu of the aforesaid commission and extra allowance, or his share thereof, unless he shall, by a written instrument, filed in the court issuing his letters, renounce all claim to such compensation given by the will."

"A codicil is a clause added to the will after its execution, the purpose of which is either to alter, enlarge or restrain the provisions thereof. It does not supersede or revoke the will as an after-made will would do, but it is a part thereof, to be construed with it as one entire instrument." *Lee et al.* v. *Lee* (1910), 45 Ind. App. 645, 647, 91 N. E. 507. Having that rule in mind it is apparent that appellee's appointment as executor was a qualified or conditional appointment which provided for the substitution of others in the event that appellee was unwilling to comply with the condition and serve for the compensation

named. Such a conditional appointment is valid and within the right of the testator to make, 33 C. J. S., p. 907, § 24, and unless the appointee is willing and able to qualify and serve under the condition imposed, he is not entitled to serve at all. *Knox et al.* v. *Newman* (1888), 44 N. J. Eq. 309, 15 A. 415. That a testator should be at liberty to make such a conditional appointment is so apparent as to require no elaboration or citation of examples. In fact, a provision for alternative executors is in the nature of a conditional appointment insofar as the alternate is concerned, and such was the case in *Suverkrup* v. *Suverkrup, Executor* (1939), 106 Ind. App. 406, 18 N. E. (2d) 488, which is the case principally relied upon by the appellee to sustain his position here. Unless forbidden by statute we know of no reason why a condition such as that in the instant case• may not be imposed, and we know of no statute forbidding it. That those named as alternate executors were not bound to accept the compensation mentioned as a condition of their own appointment does not change the situation. For aught we know, the testator may have had good reasons for the unusual wording of the codicil. In this case the appellee could of course have renounced his appointment in writing or by failing to qualify within twenty days after probate of the will. (§ 6-203, Burns' 1933.) Instead, with full knowledge of the terms of the will and codicil, he qualified and entered upon the discharge of his duties; by his silence, we think, permitting the Court and interested parties to believe that he was willing to serve for the compensation named and had thus satisfied the condition. Under those circumstances, may he later renounce the condition, continue in office, and receive greater compensation? We think not. We believe that when he qualified as executor, with full

knowledge of the terms and conditions of the will and codicil, he impliedly agreed to the condition and that he could later no more renounce that condition than could he renounce any other condition, the compliance with which was necessary to secure the issuance of letters testamentary to him.

We believe the *Suverkrup* case was correctly decided but that it is not a precedent for the case at bar. There an executor was unqalifiedly appointed and provision made for his compensation as such and the statute was intended to and did apply. Here the appellee was not unqualifiedly appointed but was appointed only on condition that he would accept the compensation named. Had he expressed his intention not to do so, as we feel it was his duty to do under all of the circumstances in this case, it would have been at once apparent to the court that the condition was not satisfied and that the appellee was, therefore, not entitled to letters testamentary. The statute was not intended to destroy the right of a testator to make a conditional appointment of an executor or to defeat his purpose in making such conditional appointment. This construction of the statute gives effect to the testator's manifest intention and in no way limits the power or jurisdiction of the court, for if such a conditional appointee or alternate appointee meets such a condition, the compensation would, under the statute, be deemed a full satisfaction for his services, and if such a conditional appointee or alternate appointee fails or refuses to meet such condition, the court has full power under the statute to appoint (§ 6-205, Burns' 1933) and fix the fee (§ 6-1416, Burns' 1933).

In view of the conclusions already reached, it will be unnecessary to discuss the amount of the allowance in relation to the amount of services rendered.

Judgment reversed with instructions to the trial court to enter judgment in accordance with this opinion.

NOTE.—Reported in 50 N. E. (2d) 928.

### ON PETITION FOR REHEARING.

DRAPER, J.—In his petition for rehearing the appellee Danner insists that the allowances in question were made upon the filing of a current report and that it was not, as stated in our opinion, "a final allowance of fees made in anticipation of immediate final settlement of the estate," for the reason that certain claims filed against the estate remained unpaid at the time of the entry of the judgment.

It does not appear to us that the paper in question was intended to serve the purpose of a current report. It mentions no unpaid claims. It is entitled "Executor's Petition To Fix Allowances For Him and Attorney." It recites that the executor has paid all funeral expenses, all debts of the decedent, the legacies under the will, and costs of administration with a few minor exceptions which he is prepared to pay when definitely ascertained, and that nothing remains to be done except to ascertain the amount of compensation for himself and his attorney, pay same with balance of costs and expenses of administration and make final distribution. The appellant's condensed recital of the evidence indicates that claims filed had been allowed and paid and a reference to the transcript indicates the following testimony by Danner with reference to claims:

"Q. You remember what claims were filed against the estate? A. This lady Mrs. Lankford filed one claim for services in collecting rents down at the Virginia Apartment.

"Q. What other claims were filed against the estate? A. I have filed one claim.

"Q. Well anybody else? A. Well various kinds of bills—I don't remember any other claims.

"Q. Well were they not all filed as claims against the estate? A. Yes.

"Q. Why didn't you pay them before they were filed? A. Because I thought they ought to have been sworn to, and had not been sworn to, before I paid them.

"Q. You asked them to file claims? A. Yes.

"Q. And then you allowed the claims and paid them? A. Yes."

Something was said on oral argument to the effect that the appellee Danner, after the filing of his petition for the allowance of fees and after the filing of appellant's objections thereto, had himself filed a large claim against the estate. Neither the nature of the claim, appellee's reasons for delaying its filing, nor the fact that it was pending unpaid was in any way brought to the attention of the trial court in connection with the representations in the petition or the hearing thereon. The appellee chose to go to trial on the petition as filed, and if we are to assume, in spite of appellee's testimony, perhaps upon the theory that the appellee could not allow his own claim, that his own rather tardily filed claim remained unpaid, it could yet not change our opinion as to the finality of the judgment rendered on the only issue tendered.

The appellee earnestly contends that we erred in holding the bond filed by the appellant to have been sufficient as to amount. However, we adhere to our opinion that it was sufficient. Under the construction of the statute (§ 6-2001, Burns'

1933), contended for by appellee, it would have been necessary for the appellant to have filed a bond in the sum of $12,000, whereas its liability under it could hardly exceed the sum of $50. We do not believe that the Legislature intended such a ludicrous result.

The appellee contends that our decision contravenes § 6-201, Burns' 1933. This court has held that unless disqualification under at least one of the provisions of this statute is shown, it is mandatory upon the court to issue letters to the one appointed or nominated as executor by the terms of the will. *In re Stahl's Estate* (1942), 113 Ind. App. 29, 44 N. E. (2d) 529. In the case last cited it is also said that a testator may not be deprived of the right to name a competent executor, nor may the court refuse to appoint a nominee because reasons are alleged which warrant the belief that the executor *will subsequently incur specified disabilities,* or so conduct himself as to warrant revocation of the letters. It is recognized that the testator may himself impose conditions or specify disabilities precedent to the appointment of an executor as in this case, and we hold that the failure or refusal of the one conditionally appointed to satisfy a condition precedent to his appointment incapacitates him under the third clause of the statute. When, however, letters are issued to an executor under the circumstances related in this case in our original opinion, he will be held to have impliedly agreed to a condition such as here imposed and will be bound by it.

NOTE.—Reported in 51 N. E. (2d) 487.